IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELA MICHAEL, ex rel.,                    Case No. 6:11-CV-06249-AA
WILLIAM E. MICHAEL,                              OPINION AND ORDER

       Plaintiff,

   vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.        ʻ
_____

Richard F. McGinty
McGinty & Belcher, Attorneys
P.O. Box 12806
Salem, Oregon 97301
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97201

David J. Burdett
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

PAGE 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff, Angela Michael, brings this action on behalf of her late husband, William Michael (claimant), pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied claimant's applications for Title II disability insurance benefits (DIB) and Title XVI supplemental security income (SSI) disability benefits under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Claimant protectively filed applications for DIB and SSI on September 19, 2007, and August 22, 2007, respectively. Tr. 100, 106. After the applications were denied initially and upon reconsideration, he timely requested a hearing before an administrative law judge (ALJ). Tr. 58, 69, 76. On November 8, 2009, claimant passed away. On January 1, 2010, plaintiff requested to be the substituted party. Tr. 79, 122. A hearing was held on August 3, 2010, before ALJ James Yellowtail, where plaintiff appeared unrepresented. Tr. 35. Thereafter, on September 2, 2010, the ALJ issued a decision finding claimant not disabled within the meaning of the Act. Tr. 13-24. On June 17, 2011, the Appeals Council declined to review the ALJ's decision. Tr. 1-3. Plaintiff then filed a complaint in this Court.

## STATEMENT OF THE FACTS

Born July 13, 1965, claimant was 41 years old on the alleged

PAGE 2 - OPINION AND ORDER

onset date of disability. Tr. 100, 106. Claimant obtained a GED and an associates degree in mechanical engineering. Tr. 37. He had past relevant work experience as an auto mechanic. Tr. 22. Claimant alleged disability beginning May 25, 2007, due to an anxiety disorder and back pain. Tr. 131, 134.

## STANDARD OF REVIEW

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Commissioner's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v.

PAGE 3 - OPINION AND ORDER

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566,

PAGE 4 - OPINION AND ORDER

416.966.

## DISCUSSION

At step one of the five step sequential evaluation process outlined above, the ALJ found claimant had not engaged in substantial gainful activity since the alleged onset date. Tr. 15, Finding 2. At step two, the ALJ found that claimant had the following severe impairments: obesity, chronic low back pain, status post left knee arthroscopic meniscus repair, and generalized anxiety disorder. Tr. 16, Finding 3. At step three, the ALJ found claimant's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment.

The ALJ next determined that claimant had the residual functional capacity (RFC) to perform a reduced range of light work. Tr. 18, Finding 5. Claimant could stand and walk for four hours out of an eight hour work day; however, he required a break every thirty minutes to change positions. Id. Claimant could also occasionally bend, stoop, twist, and crouch, as well as lift twenty pounds occasionally and ten pounds frequently. Id. Further, claimant was restricted to brief contact with both the general public and coworkers. Id.

At step four, the ALJ determined that claimant was unable to perform his past relevant work. Tr. 22, Finding 6. Finally, at step five, the ALJ found that there are jobs existing in significant numbers in the national and local economy that claimant could have performed. Tr. 23, Finding 10.

Plaintiff challenges the ALJ's decision on four grounds. First, the ALJ improperly discounted the claimant's testimony. Second, the ALJ incorrectly assessed the opinions of two examining physicians, Drs. Landfield and Stoltzfus. Third, the ALJ improperly discounted her lay witness testimony. Fourth, the ALJ's RFC and subsequent hypothetical to the Vocational Expert (VE), indicating claimant could perform a reduced range of light work, violated the Social Security Regulations (SSR).

I.  Claimant's Credibility

Plaintiff argues that the ALJ failed to properly evaluate claimant's testimony by finding him not credible without offering reasons supported by substantial evidence.

The ALJ must consider all symptoms and pain which "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. §§ 404.1529, 416.929(a). Once a claimant shows an underlying impairment that may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation and citations omitted). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ, applying the first step of the credibility framework, found "that the claimant's medically determinable impairments could reasonably be expected to have caused some of the alleged symptoms." Tr. 19. In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the above [RFC]." Id.

Plaintiff argues that the second statement is erroneous because it is premised on the RFC, effectively reversing the correct order of consideration. See 20 C.F.R. §§ 404.1529(4)(d)(4), 416.929(4)(d)(4) (The ALJ "will consider the impact of your impairment(s) . . . [on] your residual functional capacity."). Judges in this district have previously noted that

"the ALJ may not make a negative credibility finding because the claimant's alleged symptoms are inconsistent with [the] RFC assessment." Carter v. Astrue, 6:11-CV-06224-AA, 2012 WL 2051804, at *5 (D. Or. June 4, 2012); see also Allen v. Astrue, 6:11-CV-06167-SI, 2012 WL 2921454, at *8 (D. Or. July 17, 2012).

Here, however, the ALJ followed the phrase with several reasons for the adverse credibility finding, which plaintiff does not challenge. The ALJ noted that claimant made several inconsistent statements about alcohol use. Tr. 19. A claimant's lack of candor regarding alcohol use may be used in making a negative credibility finding. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citing Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)). Moreover, the ALJ cited evidence of claimant's inconsistent activities of daily living. Tr. 20. In January 2008, claimant reported that he was working on cars at his residence; further, he was able to negotiate with a disgruntled customer for payment. Tr. 263. This evidence conflicts with claimant's report of debilitating social anxiety and is a clear and convincing reason to find claimant not credible. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

Thus, even if it was error for the ALJ to use the challenged language, the credibility finding remains supported by substantial evidence. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (a court may affirm an ALJ's credibility finding if it is based on "substantial evidence," even if some of the ALJ's reasons are erroneous). Therefore, the

PAGE 8 - OPINION AND ORDER

ALJ's adverse credibility finding is affirmed.

II.   The Medical Evidence

Plaintiff next argues that the ALJ improperly evaluated the opinions of examining physicians Drs. Alexander Landfield and Paul Stoltzfus. Pl.'s Br. at 8-11.[1]

"The opinion of an examining physician is . . . entitled to greater weight than the opinion of a non-examining physician." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As is the case with the opinion of a treating physician, the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." Id. "And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

A. Dr. Alexander Landfield

Plaintiff argues that despite giving "significant weight" to Dr. Landfield's report, the ALJ found claimant could perform at exertional levels higher than Dr. Landfield described. Pl.'s Br. at 8-9. Further, she argues that Dr. Landfield's report was ambiguous, triggering the ALJ's duty to further develop the record. Id. at 9-10.

Dr. Landfield performed a detailed physical examination of

---

[1] Plaintiff's opening brief was mis-paginated; therefore, all citations to that document disregard the inserted page numbers and instead refer to the natural sequence of pages found therein.

claimant and determined that he had the exertional capacity to "lift or carry 10-20 pounds frequently and 10 pounds occasionally, limited by his back pain." Tr. 240. The ALJ noted Dr. Landfield's report and accorded it "significant weight," but did not directly incorporate those exertional limits into claimant's RFC. Tr. 18, 21. Instead, the ALJ determined that claimant could "lift twenty pounds occasionally and ten pounds frequently." Tr. 18.

It was not error, as plaintiff argues, for the ALJ to reach slightly different exertional limits than were offered in Dr. Landfield's report. Dr. Landfield's determination that claimant could "lift 10-20 pounds frequently," belies plaintiff's reliance on Dr. Landfield's other finding that claimant could lift "10 pounds occasionally."[2] Tr. 240. Further, an ALJ is permitted to rely on an internal inconsistency in a physician's report to resolve ambiguities or conflicts in medical testimony. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999). Here, the ALJ appropriately relied on Dr. Landfield's conclusion that claimant could "lift 10-20 pounds frequently," which was consistent with the findings of Drs. Eder and Westfall, to reach the RFC's exertional limit. Tr. 18, 21; cf. Meanel v. Apfel, 172

---

[2] It is likely that Dr. Landfield simply made a transcription error in his report. Read literally, claimant could lift more weight frequently than he could lift occasionally, which is an absurd outcome. Tr. 240. Read more reasonably, claimant could lift ten to twenty pounds occasionally and ten pounds frequently. Regardless, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

F.3d 1111, 1113 (9th Cir. 1999) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").

Plaintiff is correct that the ALJ, in certain circumstances, has a duty to "fully and fairly develop the record," particularly where, as here, the claimant is unrepresented. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations omitted). There is, however, no indication that the ALJ failed to fulfill that duty. Although a sentence from Dr. Landfield's opinion is ambiguous, the record as a whole is not. See McLeod, 640 F.3d at 885 (duty is triggered "where the record establishes ambiguity") (emphasis added); Tonapetyan, 242 F.3d at 1150 (record is ambiguous where the medical report relied on by the ALJ was supplied by a doctor who considered the record incomplete and recommended a more detailed report be obtained from the claimant's physicians). In making this finding, the ALJ relied on the opinions of Drs. Eder and Westfall, who opined that claimant could lift twenty pounds occasionally and ten pounds frequently. Tr. 249, 289. Moreover, plaintiff fails to point to any medical evidence in the record, and the Court finds none, that is inconsistent with the ALJ's exertional limitation or that might support a finding of ambiguity. See Tonapetyan, 242 F.3d at 1150 (the ALJ could not ignore explicit evidence of an ambiguity). Because the ALJ reasonably resolved the discrepancy in Dr. Landfield's report, the ALJ did not err by failing to contact Dr. Landfield for an explanation.

PAGE 11 - OPINION AND ORDER

In sum, the ALJ's finding that claimant was limited to lifting twenty pounds occasionally and ten pounds frequently is free of legal error and supported by substantial evidence; it is therefore affirmed.

B. Dr. Paul Stoltzfus

Plaintiff next argues that the ALJ's reasons for rejecting Dr. Stoltzfus's uncontradicted opinion were neither clear and convincing nor supported by substantial evidence in the record.

Claimant underwent a pschyodiagnostic examination with Dr. Stoltzfus three days after his examination with Dr. Landfield. Tr. 242-47. Following the examination, Dr. Stoltzfus opined that claimant "has shut down and reclused to his house most of the time." Tr. 247. From this, Dr. Stoltzfus concluded that claimant "appears to be mostly non-functional and unable to pursue even the most rudimentary tasks of organizing his day into a productive venture." Id. The ALJ considered this report, but gave it little weight for four reasons: (1) it was based largely on claimant's self reporting; (2) it was inconsistent with claimant's daily activities; (3) it was inconsistent with Dr. Landfield's observations, made three days prior; and (4) it was inconsistent with the overall medical record. Tr. 22.

As an initial matter, the parties disagree whether Dr. Stoltzfus's opinion is contradicted. The Commissioner argues that the opinions of reviewing physicians Drs. LeBray and Lahman effectively contradict the opinion of Dr. Stoltzfus. Def.'s Br. at 9. The Court agrees. An ALJ may disregard the opinion of a

treating or examining physician in favor of a contradictory
reviewing physician who relies on the other physician's clinical
findings if the ALJ offers specific and legitimate reasons. See
Orn, 495 F.3d at 632-33; Bayliss v. Barnhart, 427 F.3d 1211, 1216
(9th Cir. 2005).

On February 28, 2008, Dr. Peter LeBray reviewed claimant's
medical records for the state agency and concluded that Dr.
Stoltzfus's opinion was based on observations of claimant made
when he knew he was being evaluated. Tr. 283. Dr. LeBray, having
reviewed claimant's entire medical record, concluded that
claimant was suffering from anxiety, but proposed more modest
functional limitations than those suggested by Dr. Stoltzfus. Id.
On reconsideration, Dr. Frank Lahman, a second reviewing medical
source, agreed with Dr. LeBray's evaluation of Dr. Stoltzfus's
opinion, as well as with Dr. LeBray's proposed mental RFC. Tr.
290. The opinions of Drs. LeBray and Lahman both propose mental
functional limitations that are substantially less restrictive
than Dr. Stoltzfus's. Thus, Dr. Stoltzfus's opinion is
contradicted and the ALJ need only to have provided specific and
legitimate reasons for rejecting it. See Thomas, 278 F.3d at 947.

"[A]n ALJ does not provide clear and convincing reasons for
rejecting an examining physician's opinion by questioning the
credibility of the patient's complaints where the doctor does not
discredit those complaints and supports his ultimate opinion with
his own observations." Ryan v. Comm'r of Soc. Sec., 528 F.3d
1194, 1199-200 (9th Cir. 2008) (citing Edlund v. Massanari, 253

F.3d 1152, 1159 (9th Cir. 2001)). Nonetheless, the ALJ may reject a physician's opinion based on claimant's subjective reporting where the physician did not review objective medical evidence or the opinion was not supported by clinical evidence. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Bayliss, 427 F.3d at 1217.

Dr. Stoltzfus's opinion was based on an interview with claimant, a mental status examination, and a review of claimant's medical records from June through August 2007. Tr. 242. The results of the mental status exam were linked to a single concrete finding: claimant was of "below average" intelligence. Tr. 246. Dr. Stoltzfus's ultimate opinion as to claimant's functional capacity, however, is directly linked to claimant's "report . . . that he has shut down and [is] reclused to his house most of the time." Compare Tr. 247. with id. (ultimately concluding claimant is "mostly non-functional").

In Ryan, the court noted that the doctor's clinical observations were directly linked to her conclusions about the claimant's functional limitations. Ryan, 528 F.3d at 1200. Here, however, there is no evidence that Dr. Stoltzfus linked the findings of the mental status exam to his ultimate conclusion. Tr. 246-47. Indeed, it is difficult to see how the results of the mental status exam could lead to the conclusion that claimant was "mostly non-functional and unable to pursue even the most rudimentary tasks." Instead, the conclusion was based on claimant's demeanor and self-reporting during the examination,

PAGE 14 - OPINION AND ORDER

behavior that Dr. LeBray identified as a product of claimant knowing he was "being evaluated". Tr. 21-22, 283.

Further, a thorough review of the record demonstrates that claimant's presentation and demeanor during his exam with Dr. Stoltzfus stands alone as the only instance where he presented with severely debilitating psychiatric symptoms. Tr. 22. Claimant's meeting with Dr. Landfield for a physical examination three days before his meeting with Dr. Stoltzfus was cited by the ALJ as an example of this inconsistency. Tr. 22, 236-41. He presented to Dr. Landfield as pleasant, not disheveled, and in no acute distress, and during a detailed examination of claimant's hands, Dr. Landfield did not note any trembling. Tr. 238, 240. This is in stark contrast to claimant's presentation three days later: his hands trembled uncontrollably, he was "quite disheveled," and he was "thoroughly confused." Tr. 246. In addition, claimant reported to Dr. Stoltzfus that "he spends virtually all of his time either watching television or playing video games"; yet, he reported to Dr. Landfield that he spends one-third or one-half of his day on his feet. Tr. 237, 245.

Moreover, when claimant was visited by a state investigator in January 2008, his behavior was entirely inconsistent with his behavior during his exam with Dr. Stoltzfus. Tr. 258-65. Claimant was upbeat, smiling and laughing, and was able to follow and answer the investigator's questions appropriately, only occasionally relying on his wife to "recall[] a specific date." Tr. 263. During the interview, the investigator noted claimant's

hands were steady and that he demonstrated none of the other
nervous behaviors reported by Dr. Stoltzfus. Id. Claimant also
discussed his automotive repair business, run on a referral
basis, and how he had dealt with a disgruntled customer who
refused to pay. Id.

As noted by the ALJ, claimant's entire medical record
contains little evidence that would demonstrate the intensity of
his presentation to Dr. Stoltzfus was more than an anomaly. Tr.
22. On June 5, 2007, claimant first reported symptoms of anxiety
to Dr. Hadden, a treating physician. Tr. 226. Although he
reported social anxiety and presented with a small tremor in his
hands, he was in no acute distress and well-groomed. Id. Follow-
up visits with Dr. Hadden showed similar presentations. Tr. 227
(nervous behavior and tremor, but good eye contact); tr. 228 ("on
edge," but was well-groomed and without a tremor); tr. 229 (only
noted a slight tremor); tr. 230 (pleasant with good eye contact);
Tr. 344 (anxiety discussed, but no objective symptoms noted); Tr.
351 (appearance is normal); Tr. 354 (same); Tr. 359 (same).

Similarly, claimant's treatment records with his counselor,
Ward Lofgren, LPC, CADC I, demonstrate a paucity of objective
symptoms that would match those observed by Dr. Stoltzfus.
Claimant began counseling with Mr. Lofgren on July 12, 2007,
where he presented as normally dressed with good eye contact. Tr.
319; see also Tr. 301, 303, 307, 309.

As the evidence demonstrates, the intensity of the symptoms
claimant exhibited to Dr. Stoltzfus was not noted anywhere else

PAGE 16 - OPINION AND ORDER

in the record. Further, because Dr. Stoltzfus's opinion that
claimant was "non-functional" was linked directly to claimant's
demeanor and reporting, the ALJ's citation of claimant's
discredited self-reporting and the contradictory evidence in the
record constitute specific and legitimate reasons supported by
substantial evidence. <u>See</u> <u>Calkins v. Astrue</u>, 384 F. App'x 613,
615 (9th Cir. 2010) ("[A]n ALJ must be permitted to discount an
opinion based principally upon a claimant's self-reporting if the
record contains objective evidence that the self-reporting is not
credible."). Therefore, the ALJ's decision to give little weight
to Dr. Stoltzfus's opinion is affirmed.

III.  <u>Lay Witness Testimony</u>

Plaintiff asserts that the ALJ erroneously rejected lay
witness testimony. Pl.'s Br. at 16-17. The ALJ has a duty to
consider lay witness testimony. 20 C.F.R. §§ 404.1513(d),
404.1545(a)(3), 416.913(d), 416.945(a)(3); <u>Lewis v. Apfel</u>, 236
F.3d 503, 511 (9th Cir. 2001). Friends and family members in a
position to observe the claimant's symptoms and daily activities
are competent to testify regarding the claimant's condition.
<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ
may not reject such testimony without comment, but must give
reasons germane to each witness for rejecting his or her
testimony. <u>See</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir.
1996).

The ALJ carefully summarized plaintiff's hearing testimony
and written submissions. Tr. 28-45, 161-71. That testimony,

PAGE 17 - OPINION AND ORDER

however, was rejected because "the alleged level of severity [of impairment] is inconsistent with the objective medical evidence and the claimant's reported activities." Tr. 24-25.

Although the ALJ did not specifically link his reasoning to the rejected testimony, he was not required to do so. See Lewis, 236 F.3d at 512 (In evaluating lay witness testimony, the ALJ need not "clearly link his determination to [the] reasons."). When discussing claimant's credibility, the ALJ cited to and expounded on claimant's inconsistent activities of daily living, which plaintiff does not challenge. Tr. 20. Plaintiff testified that the foremost reason precluding claimant from work was his social phobia and anxiety, which was present even with friends or family. Tr. 39. Yet, the activities of daily living cited by the ALJ demonstrate, for example, that claimant was able to run a part-time mechanic business out of his home, something which would necessarily require contact with outside parties. Tr. 263.[3]

Therefore, because the ALJ provided a germane reason to reject plaintiff's lay testimony, the ALJ's opinion is affirmed in this regard.

IV. VE Testimony

Plaintiff argues that the ALJ erred by using a definition of light work that is inconsistent with the Commissioner's governing regulations, which rendered the VE's testimony invalid. Pl.'s Br. at 6-7.

---

[3] Further, plaintiff concedes that the inconsistency with the medical evidence is a germane reason for discounting lay witness testimony. Pl.'s Br. at 17.

PAGE 18 - OPINION AND ORDER

At step five of the evaluation process, the Commissioner has the burden to show that the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); see also Yuckert, 482 U.S. at 141-42. In doing so, the ALJ may define the claimant's capacity for physical exertion. See 20 C.F.R. §§ 404.1567, 416.967. However, if the ALJ determines that the claimant's capacity for physical exertion falls between two defined categories, then it is appropriate for the ALJ to consult a VE. See Moore v. Apfel, 216 F.3d 864, 870-71 (9th Cir. 2000) (citing SSR 83-12, available at 1983 WL 31253).

The RFC describes claimant as being able to perform light work with several additional restrictions, the most relevant being that he could stand or walk for four hours in an eight hour day. Tr. 18. Based on this RFC, the VE identified three jobs that claimant could perform: meter reader (DOT # 209.567-010); assembler, small products (DOT # 706.684-022); and garment sorter (DOT # 222.687-014). Tr. 23. The DOT identifies the exertional level of each job identified by the VE as "light."[4]

---

[4] The Social Security Administration uses the following definition of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless

Plaintiff argues that the ALJ's limitation on claimant's standing and walking precludes him from all light work. Pl.'s Br. at 6-8 (citing SSR 00-4p, available at 2000 WL 1898704 ("[T]he exertional demands of an occupation (as generally performed) [may not be] defined differently than the DOT."); SSR 83-10, available at 1983 WL 31251 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.")). Therefore, plaintiff argues, the VE's testimony that claimant could perform jobs classified by the DOT as "light work" is not supported by substantial evidence. Pl.'s Br. at 6-8.

Plaintiff's argument is unpersuasive because the definition of light work found in SSR 83-10 is dispositive only when the ALJ decides disability using the Medical-Vocational Guidelines instead of VE testimony. Moreover, as recognized by the regulations, a job may be classified as light work even if it requires significant periods of sitting.

The regulations define light work as a job that "requires a good deal of walking or standing," without further quantifying the phrase "good deal." See 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff's proffered definition—"6 hours of an 8-hour workday"—comes from the glossary of SSR 83-10, which is

---

there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). Exertional limits are given the same meaning by the Social Security Administration as in the DOT. See SSR 00-4p, available at 2000 WL 1898704.

explicitly limited to cases decided using the Medical-Vocational
Guidelines. See SSR 83-10, available at 1983 WL 31251 ("The
definitions of terms . . . provided in this glossary are to be
used when an individual's capability to do other work is
determined under the provisions of Appendix 2 of the
regulations."). Even accepting plaintiff's use of SSR 83-10, the
definition qualifies standing and walking requirements as
applicable to someone able to perform "the full range of light
work." Id. Here, the ALJ explicitly found claimant was restricted
to performing a reduced range of light work, which is why he
consulted a VE, rather than applied the Medical-Vocational
Guidelines. Cf. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir.
1988) ("[T]he [Medical-Vocational Guidelines] will be
inappropriate where the predicate for using the grids-the ability
to perform a full range of either medium, light or sedentary
activities-is not present."). Because the ALJ did not find
claimant had the ability to perform a full range of light work,
his RFC did not rely on an exertional definition "inconsistent
with [the Administration's] policies or definition," in violation
of SSR 00-4p.

Moreover, the regulatory definition recognizes that a job
may be classified as light work if it "requires a good deal of
walking or standing, or when it involves sitting most of the time
with some pushing and pulling of arm or leg controls." 20 C.F.R.
§§ 404.1567(b), 416.967(b) (emphasis added). The DOT adds to the
definition of light work: "job[s] requir[ing] working at a

PAGE 21 - OPINION AND ORDER

production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible."[5] Even assuming that "a good deal of walking or standing" is more than four hours in an eight hour day, plaintiff does not argue that claimant was restricted from jobs defined as light by virtue of the two alternative limitations.[6] Therefore, the ALJ did not err by relying on the VE's testimony. Accordingly, the ALJ's step five finding is based on substantial evidence and is free of legal error; it is therefore affirmed.

---

[5] Dictionary of Occupational Titles, App'x C, available at http://www.occupationalinfo.org/appendxc_1.html.

[6] Further, even if plaintiff challenged the VE's proffered jobs as being inconsistent with the RFC, the argument would fail. Assuming there was a conflict between the VE's testimony and the DOT, the ALJ is only under a duty to "elicit a reasonable explanation" when there is an "apparent unresolved conflict." SSR 00-4p, available at 2000 WL 1898704; see Mickelson-Wurm v. Comm'r Soc. Sec. Admin., 285 F. App'x 482, 486 (9th Cir. 2008). The ALJ twice asked the VE to indicate where his testimony was "inconsistent with that which was contained in the DOT." Tr. 46, 51. Where the VE indicated an inconsistency, it was only in relation to the SVP-level of the meter reader position. Tr. 49.
Moreover, it is not apparent from the DOT descriptions of a small products assembler and a garment sorter that a "good deal" of standing or walking would be involved. See DOT 706.684-022; DOT 222.687-014. The description of meter reader, however, does suggest that at least some portion of the job, as performed, involves a "good deal of walking or standing." DOT 209.567-010 ("Walks or drives truck over established route.") (emphasis added). Even assuming that the identification of meter-reader was error, the VE testified that the two remaining occupations accounted for 1,500 jobs in the regional economy. Tr. 23. Therefore, the ALJ's step five finding was based on substantial evidence and is affirmed. See Barker v. Sec. of Health & Human Serv., 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs in regional economy constitutes significant numbers).

PAGE 22 - OPINION AND ORDER

## CONCLUSION

The ALJ's decision is based on correct legal standards and supported by substantial evidence. Thus, the Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this 6th day of September 2012.

_____

Ann Aiken
United States District Judge